You notice as soon as you get up here, everyone leaves. What am I doing? I don't know. Okay. Ms. Wilcox, are you ready? May it please the Court, good morning. My name is Tara Wilcox and I represent the appellant Costco Wholesale Corporation. The damage award in this case has the effect of rewarding an employee for rejecting a reasonable accommodation and has the effect of putting him into a better position financially than he would have been had he accepted the reasonable accommodation and come back to work, as Feehuff strives to do. The whole purpose of the duty behind the — excuse me. The purpose of the duty behind Feehuff is to get the employer and the employee engaged in a dialogue with one another, the purpose of which is to ultimately reach a result or an accommodation, which will get the employee an accommodation to either return to or continue to work and enable him to, in fact, work and be an active member of the workforce. The reasonable — excuse me. The interactive process duty is not a game of gotcha. It is not intended to forever punish employers who are perhaps initially slow to start off on that process or who don't — aren't initially receptive enough to proposed reasonable accommodations. How do we know there was a reasonable accommodation here? We know it's a reasonable accommodation because that is a specific finding of the jury in this case. The jury found that there was a reasonable accommodation. Yes, it did. I thought that there wasn't — that the plaintiff hadn't found — hadn't made out there a case that there wasn't a reasonable accommodation. I'm sorry. I didn't understand. I thought what the jury found was that the plaintiff had not found by a preponderance of the evidence that there was a reasonable accommodation, that there was not a reasonable accommodation offered. Is that the same as finding that by preponderance of the evidence there was a reasonable accommodation offered? The jury — yes, I think we can fairly interpret the jury's finding as one that the plaintiff failed to prove that he was not offered a reasonable accommodation. Okay. The plaintiff failed to prove that he was not. Is that the same as proving that the defendant did offer a reasonable accommodation? I believe so, yes. I believe — let's put it this way. The plaintiff failed to prove that he was entitled to any damages for the failure to receive a reasonable accommodation. That's right. And I think that's — I think that's bolstered by the jury's other finding that in this case, Cosco did not — the plaintiff failed to prove that Cosco constructively discharged him. Well, question one, did plaintiff prove by preponderance of the evidence that defendant failed to engage in a timely, good-faith, interactive process to facilitate a reasonable accommodation for plaintiff's disability? Answer, yes. Okay. Where does it say no? You're not attacking that finding, right? We're not attacking the finding. You're just saying that he should not get damages for a period beyond — beyond that. Exactly. We are not attacking the jury's finding that Cosco failed to engage in the interactive process. What we're arguing is that the measure of damages imposed by the jury and essentially endorsed by the district court in this case is not appropriate, given the statutory scheme, given the purposes of interactive process. It runs completely afoul with the entire purpose behind FEHA, which is to get employees back to work. Well, California is kind of squishy about where it's going to cut off damages, right? That's right. It's not quite as rigid as the Ninth Circuit or as the Federal law is. So it's a little bit squishy about where damages should stop. That's correct. The — this circuit has, of course, found in the Satterwhite v. Smith decision that a resignation by an employee cuts off back pay unless the employee can prove he was constructively discharged. The California courts have essentially adopted that with favor in the Cloud v. Casey case, which is a Cal-App decision. In the Cloud case — Have they adopted that or not adopted that? They did adopt that and cited that with approval as essentially the general rule is that back pay is not available to an employee who voluntarily resigns unless he can Mr. Cohn cites the Cloud case and relies on it quite heavily to suggest that Cloud makes an exception that allows Mr. Cohn to receive additional back pay beyond the resignation date. That is not the case. That is not what Cloud does. Cloud, in addition to endorsing this Court's finding with respect to the back pay cutoff, also goes on at length to explain why that is. And it cites, again, with approval, the fact that that rule of cutting off back pay is designed to encourage employees to work with their supervisors and the employers within the employment relationship in order to find a way to overcome resistance and eradicate discrimination. But Mr. Cohn was not as fast working at the time. He didn't actually have a position. They were trying to find one, but he wasn't in the workplace at the time, hadn't been there for a year. So that's one thing that makes the usual circumstance somewhat different. And secondly, the jury also found that the defendant had failed to engage in the interactive process, which is the kind of a process that Cloud is alluding to, when it says it's better off if they stay there. But the jury had already found that that wasn't working. First of all, Mr. Cohn was an employee. And second, the ---- He was an employee, but he wasn't there working at a job. He wasn't there, but he clearly had a relationship with the employer. And what's more important in this case is that whereas Cloud does not deal with disability law, but deals with gender discrimination, that is not a trivial or a semantic difference between that case and our case. That is a very critical difference, because under gender discrimination law, there is no mechanism or obligation for the employer to work with the employee, go through an interactive process, and find a reasonable accommodation. Under FEHA ---- Here there isn't, and it was found to have failed. Well, under FEHA, there is that duty. And you're right, the jury did find that the process itself failed, but a reasonable ---- the jury found, and this is incredibly significant, that a reasonable accommodation was ultimately reasonable. But you keep saying that, but that isn't what they found. They found that the plaintiff had not proven by a 51 percent of the evidence that there wasn't a reasonable accommodation. But it was never put to them. It was the opposite question. It was never put to them. Well, I think the proper way to interpret that is that it was Mr. Cohn's duty to burden a proof at trial to prove that liability existed. He failed to do that. I'm not set to liability. I understand that there's no liability for a failure to reasonably accommodate, but that's a different question from whether there was, in fact, a reasonable accommodation offered. Well, I think one thing to ---- I think it's critical to look at why the interactive process exists to begin with and see how it dovetails with the reasonable accommodation. The FIHA itself says that the interactive process is intended to determine effective reasonable accommodations. This Court in the Barnett v. U.S. Airways case has found or has held that the interactive process is designed to reach the end product, that end product being the reasonable accommodation. This Court has also found that employers who fail to engage in the interactive process face liability only if a reasonable accommodation would have been possible. That's not the California law. That's correct. That is Barnett, which is this Court's ---- excuse me, this Court's decision. But, again, California law certainly borrows from and relies on ---- Except that California has a specific statutory provision dealing with the Federal law does. That's correct. And like I said, FIHA specifically mentions that the interactive process is to determine effective reasonable accommodations. I think an appropriate way of looking at this is to view the interactive process essentially as just that, a process. It is a path to get from here to there. The there represents the destination of reaching a reasonable accommodation. This particular subsection, i.e., requiring the interactive process, was recently amended to FIHA to essentially create a device or a vehicle whereby employers and employees can create a dialogue to get to the destination. Here's a question. It seems to me it might be a problem. When I said I think California is pretty squishy about how far damages can extend, I was thinking of something along this line.  The company, Costco, gives this guy a hard time for a long time. The jury, we can say that that's fair enough under the jury's findings. Finally, at the end of the day, it comes up with a reasonable accommodation. That is, as I see it, the jury says, okay, that would be reasonable. And without getting into a scholastic argument about whether it fell on one side or the other, the point is let's just say the jury said, okay, that was a reasonable accommodation, the final offer was. That reasonable accommodation, of course, was one that said we're going to give you the I think it's the back room job for a couple of months or a couple of weeks, a couple of months probably, and then we're going to reconsider. We're going to look at it again. By this time, he's so depressed and so down because of the fact that Costco, for all these months, was giving him a hard time, that he doesn't perceive that at that moment as being reasonable. Because he's saying, look, look what these guys are doing. They're going to say, sort of like what happened in Cloud, they're going to say, well, wait, we'll give you a couple of months and then they're going to jerk me around is what they're going to do, he thinks. All of this technically legal improper thinking in his head comes about because of the wrongs Costco's been committing in refusing to come to a reasonable accommodation in a reasonable and timely fashion. So he quits, like a lot of normal human beings would do. And the jury says to itself, well, it's really Costco's fault that he quit, even though they did offer him a reasonable accommodation at the end of the day. It's their fault that he quit. Ergo, we're going to let the damages continue for some period. That's the chain of reasoning, I think. Or a chain of reasoning. Kagan. Okay. Well, to respond to that, maybe two points. First off, we can speculate as to what was going through the jury's mind, of course, but we must, of course, live with the nonappealed jury decisions in terms of substantive decisions. And the jury specifically found that this was not a constructive discharge. In other words, it is not akin to a coerced termination. It is what it is. It is a voluntary resignation, and it does not take on any kind of termination-type status because of Costco's actions. So I think it's incorrect to say that it is Costco's fault. But the constructive discharge standard depends on a reasonable person, right? That's correct. Right. And we know, in some sense, that Mr. Cohn was a reasonable person, meaning he was – and I don't mean to say that pejoratively, but he had mental problems. That's what his disability was. And in the scenario as Judge Fernandez just suggested, for example, he may well have taken things quite differently than a person who did not have a disability. And the question is, is he entitled to be compensated for that when this is all about his mental disability to begin with? I think the problem with awarding Mr. Cohn damages on this, as Judge Fernandez has illustrated any kind of perhaps chain of events-type argument, is as follows. What that does is that it ends up treating Costco just as a jury might treat an employer who not only violated or failed to engage in the interactive process, but also failed to give a reasonable accommodation, which Costco is not guilty of, and also went ahead and terminated the employee. Well, interestingly enough, the jury actually tracked $10,000 for mitigation, which may well have, if you look at the numbers, have represented the six to eight weeks in which he was assured that he was going to have to work at the front end. So what they may well have been doing is taking that money out slightly for that period, have been assured of a reasonable accommodation, but not thereafter. The problem, though, is that what that does is that places Costco in the exact same spot. Well, no, it doesn't. As I just illustrated, because they offered that reasonable accommodation for the eight weeks, they paid $10,000 less. Well, the problem, though, is that the amount of, again, we're dealing only with economic damages here. So we don't have any kind of emotional distress damages that throw a wrench into the works or make things much more speculative. We are dealing with hard and fast wage numbers that are easily quantifiable. The $100,000, even mitigated by $10,000, resulting in $90,000, essentially you can't get there from here. It's undisputed, there is no evidence to the contrary, that Mr. Cohn was earning $16.17 per hour. Well, he could get there. He could get there until he was rehabilitated or retrained, so to speak, and then for the period that he had in the short reasonable accommodation? I guess my response to that is at what point, then, does the employer have any incentive to do the right thing? What is it worth for Costco to then go ahead, once the interactive process fails, once it stumbles during that process, let's say it doesn't do what it needed to do in that process, we will concede that that is what the jury found. But once it gets back on track and once it makes and extends a reasonable accommodation offer to Mr. Cohn. In other words, so the jury has said that you're dealing here with a motion for a new trial as to which, if there's any evidence whatsoever which could support the jury's verdict, you lose, right? I believe the test would be whether the damages are excessive or whether there is a lack of adequate evidence. I would like any evidence. Right. Lack of any evidence, because the district court denied the motion, and at this point on appeal, it has to be a lack of any evidence. Well, I believe that's Any theory on which this could be a foul. I believe that's the case here, that there is no evidence. Again, the Maybe the jury's theory was there was a reasonable accommodation, but it only lasted for eight weeks. I'm sorry, I didn't hear you. Maybe the jury's theory was, yes, there was, they did offer a reasonable accommodation, but they only offered it for eight weeks. So they cut it, so after the eight weeks, they picked the damages up. I don't think we can get, I don't think we can do that. I think the, Mr. Cohn has pointed out in his brief that temporary accommodations are not reasonable. That may be, but clearly here, we must live with the jury's finding, and that is that this accommodation was reasonable. I have another question. Was the jury, did you ask for a jury instruction that if there was, that unless there was constructive discharge, there couldn't be any post-resignation damages? I don't believe that was part of the jury instruction package. Well, isn't that a problem? If the jury was just told that it was to give consequential damages, and these are consequential damages, unless there's some legal reason why they couldn't give them, and they, you never ask for an instruction. We have a case called Pantosina, which deals with this waiver question, exact waiver question. Did you, did you ever ask for such an instruction? I don't believe that, like I said, I don't believe that was part of the package, and I don't recall that being requested. So why isn't it consistent with the instructions, and therefore okay? I think the bar to awarding this amount of damages, and it's not even just the amount, it's the timeframe over which it covers, is because to do so, and this admittedly, I think it's a case of first impression. I'm not aware of any decision where the damages for a failure to interact, engage in the interactive process, where a reasonable accommodation has been extended has ever been decided. So given the fact that I think we are plowing new ground here, I think it is patently violative of FEHA, and the entire purpose of FEHA to get disabled employees back to work, to incentivize employees to reject reasonable accommodations once the employer ends up offering them, and to incentivize employees to turn down reasonable accommodations in hopes of a better offer, or one that they find to be more attractive later on. Again, that is against the clear wealth of case law, including California authorities such as Hanson v. Lucky Stewart. Here's this instruction, number 39. Who submitted that? It says the total amount of plaintiff's damages, economic and non-economic, is the following elements that claim loss or harm, provided that you find that this loss or harm was or will be suffered by plaintiff, and was or will be caused by the act or omission upon which you base your finding of liability of the defendant, if you so find. The term economic damages means objectively verifiable monetary losses, including loss of earnings, loss of employment, and loss of business or employment opportunities. Then they define non-economic, and it taught reasonable compensation for any fears, anxiety, or other emotional distress. So this is non-economic. But all he got was economic, right? And all he got was economic, yeah. That's correct. And no definite standard or method of calculation is prescribed by which to fix reasonable compensation for emotional distress. So it is the opinion of any witness required. Then it goes on. The problem with the damage award, again, is that this result puts an employee like Mr. Cohn in a better position. Was this objection, was this instruction objected to? I don't believe so, no. The problem is it puts Mr. Cohn in a better position than he would have been. It goes beyond making him whole. I believe to make him whole, we would need to assume and look at what would have happened had Costco properly engaged in the interactive process. In other words, started the dialogue right away, been perhaps more receptive to offers and possible job solutions. In that case, he wouldn't have resigned, and we wouldn't have had this problem. Yeah. But, again, we must live with the jury's finding that a reasonable accommodation was offered and that the resignation was voluntary. So what I believe is the appropriate analysis is to take a look at what would have happened had Costco done things properly. Let's say it moved very swiftly, was very receptive. And, again, the goal of the interactive process, the one and only goal, is to offer a reasonable accommodation. Yeah, but that didn't happen, you know, that didn't happen until all this other stuff went on. But it did happen. Yeah, but it did happen. But it is, you know, you think better late than never. Exactly. It did happen. And I believe the proper measure of damage is let's look at when it should have happened. When should that reasonable accommodation have been offered? Had Costco done the right thing and done it quickly and done it more diligently, when should that accommodation have been offered? Now let's move forward to find out. Let me ask another question. Was the jury instructed that a temporary accommodation doesn't count? Was the jury instructed if? That a temporary accommodation doesn't count. I believe so, but I don't have a cite to that. Only some of the jury instructions, I believe, are in the record. Where are the next? Is that right? That's right. That's right. Well, you know, you've gone beyond your time here. So why don't we hear from the other side? Okay. Good morning, Your Honors. Doug Pettit on behalf of Bradley Cone. I think that the first point I'd like to make is that the instructions that we referred to, instructions number 39, with regard to economic damages, was offered without objection. It is based on the standard California Book of Approved Jury Instructions. The jury was not instructed with regard to a temporary accommodation is not a reasonable accommodation that I can recall. The jury was what? Was not instructed with regard to the question by Judge Bergeon was the jury instructed with regard to a temporary accommodation. The jury was not instructed in that regard. The questions asked by Ms. Wilcox, questions to the effect of when should Costco have initiated the interactive process? Did Costco ever initiate the interactive process? What kind of damage did that cause, Mr. Cone? What kind of damage resulted from that? Should he have returned to work? Did he not return to work as a direct result and proximate cause of their failure to engage in the interactive process? I think all have already been answered by the jury below. And there was evidence in the record to support that conclusion. I think there was also evidence in the record to support the district court's conclusion that the jury's findings were adequately supported by the evidence introduced at trial. To get there, you really almost have to say, though, don't you, because of their sloth in getting on with the interactive process, that affected what he ultimately did when they finally did come up with an accommodation, right? Yes. I think that has to be the causal chain, doesn't it? I think that's one thing that's part of the causal chain. I think first is their sloth or their delay, or I would even put it, the jury could find their refusal to engage in the interactive process. I think second. Well, that's what they found on number one. Right. I think second, another step you look at is the context in which the offer is finally made. In other words, you've got a lengthy period of time that goes on where Mr. Cohen is attempting to get back to work. And there's ample evidence in the record of all his efforts to do that, you know, accepting jobs that are essentially demotions, that are cuts in pay, cleaning up boxes. So he's taking a number of steps to try to get back to work. They reject every option he's suggesting. He even applies to a new warehouse. Well, that's what we just said. That's what we just said. That's why number one comes down because of all the stuff they were doing. Right. That's why you lose on question number — you win on question number one. Right. Finally, Costco says, okay, here's an accommodation. The jury seems to think that's reasonable. Whether we do or not is another question. The jury seems to think so, and we're not — that's not on appeal. So the way to see — I don't see how you skip over that. Unless you say something like, well, because of all this stuff you're talking about, that really caused him to reject it and to quit. I think that, and I think also, you know, first, I do agree with Judge Berzon, is that the jury did not find a reasonable accommodation. We had the burden. They might have simply found we didn't meet the burden. They might have simply found that it was temporary and they didn't know what would have happened. Well, you know, you can say that about every single case that ever gets decided and every issue that gets decided. So you've got to prove X by a preponderance of the evidence, and if you don't, the law just says you didn't prove it, but it's still the case. That doesn't make too much sense to me. Well, I think the point I'm trying to make — In a funny way, maybe, but — I think the point I'm trying to make there is that Costco is attempting to use that finding as a way of cutting off damages. Sure. And I don't think that finding stands for all that they purport that it does. But moving on, I think the other issue is — Can I ask you a question? Yes. Who asked for these special verdicts? Both parties submitted special verdicts. I think initially we asked for a general verdict, but both parties ended up submitting special verdicts at the request of the trial judge. And I think the trial judge worked with us, and we reached an agreement on the special verdict finally. Isn't the most sensible way to reconcile what the jury did, given that it was not informed that a temporary accommodation is not a reasonable accommodation, that they found that there was a reasonable accommodation, but it was temporary? I mean, that makes good sense as a number, because then what you've got is — and we have to take the case as it was framed by the jury instruction for present purposes. So then what you've got is $100,000, which is about — which conforms to the charge that the expert gave, except for $10,000 out, which, as I calculated, is just about the eight weeks' worth of pay. I'm sorry. I didn't catch the very last part. In other words, that the $10,000 — they took $10,000 out for lack of mitigation. That presumably is exactly the time period that they thought that the reasonable accommodation was available to him, i.e., about eight weeks, six to eight weeks. Wouldn't that be about $10,000 in his salary? I haven't done the computation, but it sounds like it would be. I think that's about right. So that makes a lot of sense. And we're supposed to be looking for some way to uphold this thing, not some way to knock it down. So why do we have to get into any of this? Why don't we just say, given the instructions as they were given, the jury didn't know that a temporary accommodation wasn't a reasonable accommodation, so they thought there was a reasonable accommodation, but it was temporary, so they took it out. I mean, that's one way to reconcile the jury verdict. I agree. I think in answer to Judge Fernandez's question, too, in terms of the causal connection, I think Judge Brewster, in ruling upon the motion for new trial, had a number of findings that were supported by the evidence when he noted that even though this offer was made, it was not an offer to engage in the interactive process. It was instead a unilateral offer, a temporary offer. There was not a suggestion to say, let's sit down and talk about different options for you. Let's sit down and talk about potentially applying to the Mission Valley Warehouse. So I think it's very similar to what we had in Cloud, where the Court held in Cloud that the plaintiff had worked toward attempting to obtain promotions, that she was justified in that. And Cloud was, in fact, it's not a jury verdict, but instead was the Court had granted motions in limine, and they were reviewing the motions in limine where the Court restricted the fact pay award. The problem in Cloud, though, wasn't it, that what they said was not to worry the – if I'm thinking of the right case – the bad guy's gone, wait around a couple of years and see what happens. Yeah. And I think that's very similar here, where – They said – they said – no, these guys said you've got a job for two months, was it? Was it two months that the review was going to be? In Cloud? No, this case. Oh, in this case, they said eight weeks. Yeah, eight weeks, which would come to about $5,100 of salary, I guess. But in eight weeks – so you've got eight weeks. And then we're going to look at it again, right? Yes. Okay. Yes. So they're doing something immediately, as opposed to in Cloud, they said, oh, well, not to worry. Come back someday and we'll see what happens. And I think in some ways, given the facts of this case, it's the worst situation in Cloud, because Mr. Cohn, number one, has a permanent condition. He doesn't have a temporary condition. He's worked at Costco for 12 years. He's gone on four leases of absence. He's been seeking an accommodation, accepting the facts in the most favorable way to the verdict since June of 99, accepting even Costco's version since December of 99. And yet this accommodation is for six to eight – excuse me, eight weeks. Further, it is he will be managed by the very same person that he feels has specifically not complied with California law, that has not engaged in the interactive process, Mr. Starnes. So he says to himself, that's not reasonable, right? Yes. And he quits. Yes. But now we know that it was reasonable, right? Well, there's some dispute about that. But given that – Well, we know that the jury says that he didn't prove it wasn't reasonable. That's correct. At the very best, when he said to himself, they failed to give me a reasonable accommodation, and he quits. We know he was wrong about the first part of that sentence, right? Because they didn't fail to give him the reasonable accommodation. He didn't prove that. Well, if we accept, I think, the premise of what the jury verdict is, if we go with that premise, the jury disagreed with him. I mean, whether or not – I mean, he – was he wrong? I mean, I think that's a subjective question. Was he wrong? No. I think the jury ended up implicit in the finding, because the jury's conclusion that he wasn't wrong, because they did award him damages for continuing pay. I think the jury came to a different conclusion from an objective standard. But they – now, the issue in California law is there's never been a decision in California law that has applied the post-resignation rule. And, in fact, the Ninth Circuit does not blindly apply the post-resignation rule. If you look at the case of Thorne v. El Segundo, which we cited in the brief, had a very similar situation to Clack, where you had a plaintiff who was seeking promotions. She did not obtain the promotion that she wanted. She resigned. The court found there was not a constructive discharge, and the defendant asked that the damages be limited as of the date that she resigned. And this Court rejected that contention, finding that on the facts of that case, that her decision to resign was approximately caused by the unlawful conduct. So I don't think there's been blind obedience, even by the Ninth Circuit, to the post-resignation rule. And the California courts have never applied it. Under California law, the issue has been is what damages were approximately caused by the unlawful conduct. That's exactly the way the jury was instructed here. I think there is adequate evidence to support that conclusion in the record. I think when Judge Brewster ruled, he found that there was adequate evidence to show that that was the cause of the resignation. I think importantly, if you look at the letter he finally did receive, they basically write to him saying, accept or deny this fox-proof position. Please respond to this offer by June 1, 2000. If you don't, we will tender a letter of resignation from your employment with Costco. He beat them to the punch and tendered his resignation first. But there was no attempt to engage in the interactive process. There was no attempt to discuss other options. I think there was adequate evidence for the jury to conclude they never engaged in the interactive process. He was faced with the problem of going back to an employer that was refusing to interact or negotiate with him on potential resolutions. He was going back into a position of the same manager, Scott Stearns. He was going back when they offered a position that was temporary and only offered it after they said we can't do this, and only after he complained to the Equal Employment Opportunity Commission. So he, I think, had adequate evidence to conclude, adequate knowledge at that point in time to conclude it wasn't in good faith, and the jury could have reached the same conclusion in determining the damages it awarded. Well, you know, what argument did you make that would support the $100,000 version? I think the argument we have is the ---- And the evidence. I'm sorry? And the evidence.  Of course, Your Honor. The evidence would be that there was, specifically for the damages, we introduced an economic expert who gave her testimony and calculations with regard to lost wages from the date when Mr. Cohn had first sought to return to work and had first had a doctor's release to return to work in January of 2000. She provided two calculations based upon vocational rehabilitation plans introduced by a witness named King Twentyman, who was a State Rehabilitation Counselor. Judge Brewster found that the award, and this was, I think, supported by the numbers. What were her calculations? Her calculations were, I believe, $110,000 under the one version and $220,000 under the other version. Judge Brewster found that if the ---- based upon the timing of the one version, that if the jury had Her two numbers were exactly $110,000, $348,000. The second assumption was $231,000, $180,000. That number took a slightly past, I think, the date of the trial, and Judge Brewster found that it basically equaled back pay. I know there has been some discussion as well about the standard of review. There was some discussion in the appellate briefs. We agree with Judge Burson's earlier comments about if there's any evidence that supports the verdict, it should be approved. That's consistent with the Seventh Amendment that encourages validation of jury verdicts. I think also this Court recently issued a decision, and I looked at this after there was some dispute between the opening brief, the response brief, and the reply brief, but this Court, in a decision in which I think Judge Pregerson was the author, called Hemmings v. Tiedemans at 285 F. 3rd, 1174, which was a decision last year, in a case which was pretty similar in terms of the damage amount where, in a sexual discrimination case, they awarded plaintiff's damages. They made a motion for a new trial under Rule 59. The motion was denied by the judge. They appealed it. And in that decision, it was written that we will not reverse the district court's denial of a motion for new trial unless the damages are grossly excessive or monstrous. Here, I don't think they were, and the evidence adequately supported the jury's finding. There are a couple. If I can move on, I would like to address one final issue. I don't know. We have not addressed the fee appeal at all, and I'll save that for the last couple minutes of my argument. I would also point out, though, that I think that in its recitation of the record, some of the statements about what the jury found does not comport with what the jury could have found. First and foremost is I don't think there was ever a finding at a Costco engaged in the interactive process in good faith. In other words, the jury never found that this period of time for which damages accrued only occurred for 75 days, which is what's contained in the opening date. There's never a finding. Well, you know, we didn't have any argument on your fee. Yes. So. Would you like me to address that or not? I mean, so what is it that you're arguing? Why do you need to argue it? I don't. Unless the Court has a question about it, I won't. It's an issue before us. Assuming there are no questions, I think the only case that I would point to, because there were some discussions about the fee, would be the case of Beatty v. BET, which was an opinion written by Judge Berzon, where she goes through quite extensively the analysis for the fee. That case was reversed and sent back to the district court to determine whether the Lodestar match would be reduced for successful versus unsuccessful claims. But she noted that the only reason that was the case was because there was no indication the judge understood he had discretion. Here, Judge Brewster clearly acknowledged he had discretion, clearly considered the extent to which there was an argument that he was successful in unrelated claims, and found that the claim could be related in a word of fee. So he did exercise his discretion clearly. In conclusion, unless the Court has other questions, I don't feel the need to take up all 20 minutes, especially given our closeness to the lunch hour. I think the evidence was adequately supported by the record that there is evidence to support the jury's award on damages and that there is no basis under California law to apply a post-explanation rule or in some way cut off the damages. Thank you very much for your time. All right. I'll give you a minute for rebuttal. Thank you, Your Honor. The problem here is that as a matter of law, the damages need to cut off at the point that Mr. Cohn rejected the reasonable accommodation that was offered to him by Costco and or at a minimum, the damages need to cut off at the point in time at which he abandoned his employment relationship altogether. If it were true that, assuming that the representation of the jury was not instructed that a temporary accommodation is a reasonable one, why did they cut off then? Why didn't they just simply assume that they found it was a reasonable accommodation but only for a limited period of time and therefore picked up damages again? Because then the damage award would be, if that is what was going through the jury's mind that this was a temporary accommodation and that the whole process would start up again in the next eight weeks, I think that is an entirely speculative result and I don't believe that damages can be awarded on that basis. We don't know that the jury thought that temporary ---- We don't know that, but we're in a very, very, very deferential situation at this point. Is there any theory consistent with the fact in which the jury's verdict could be upheld? I understand that. When I'm saying that this is a matter of law, it does not make sense under FEHA or any of the cases that interpret it to extend damages out beyond the date. Why not? If you had said to him, as it appears you did, we will assure you that you won't work in the front end for eight weeks, but we won't provide any insurance after that. Then why does it make sense to say, not knowing that that's not a reasonable accommodation because no one told him that, that there wasn't a reasonable accommodation but it was only available for eight weeks. Therefore, we're going to take that eight-week debt. It's been something like that. It's actually a little more tacit, not far-off figure. And other than that, he was injured by the lack of the interactive process. What's wrong with that? The problem with that is as follows. The accommodation is the end point. And under this Court's authority and as well as FEHA, there is no continuing obligation to engage in the interactive process beyond the point in time at which a reasonable accommodation is offered. Again, the jury found here that a reasonable accommodation was offered. We cannot, even if for some reason it was running through its mind that in eight weeks a new accommodation would be needed, at that point in time we don't know what's going to happen. So it's entirely speculative to guess at what the result there might be. The other reason why it's inappropriate to award damages beyond that point in time is because it treats COSTCO just like it would treat an employer who gave no reasonable accommodation. No, it doesn't. It treats COSTCO as an employer who only gave a temporary reasonable accommodation. I'm sorry, I didn't hear you. It doesn't do that because it takes out the amount of money for the time if there was a reasonable accommodation offered. Actually, those numbers don't quite play out that way. They don't quite play out, but it's pretty close. Okay. Again, though, again, though, it doesn't, what this result would do would be to incentivize an employee to reject reasonable accommodations and essentially roll the dice, hoping that he can walk away from his employment, not work, reject the employer's offers, and go to trial in the hopes of winning a big jury award. But he actually had a legal right to reject a reasonable accommodation if it was, in fact, temporary. I'm not aware of any authority that allows an employee to reject a reasonable accommodation. If it were temporary, he did have the right. In several ways, the result we have here may be framed by the jury instructions and what the jury wasn't told in those instructions. All right. Just in conclusion, Your Honor, I do believe this runs completely afoul of FEHA. The whole purpose behind the disability laws is to get employees back to work, not to encourage them to turn down offers and not to punish employers who ultimately do the right thing, even though it may take them longer to get there. Thank you. Thank you. We'll recess till 9 a.m. tomorrow morning.
judges: Pregerson, Fernandez, Berzon